**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

---

TACARRA WASHINGTON, LATANJA
JOHNSON, BERNARD JOHNSON, AND
GEORGE THOMAS, individually and on
behalf of all others similarly situated,                          JURY TRIAL DEMANDED

                   *Plaintiffs*,                          Case No.

       v.

THE WINE GROUP, INC. a California
Corporation; The WINE GROUP, LLC,
a California Corporation; SUTTER
HOME WINERY, INC., d/b/a
TRINCHERO FAMILY ESTATES, a
California Corporation; FOLIE A DEUX
WINERY, a California Corporation;
CALIFORNIA NATURAL PRODUCTS,
a California Corporation; REBEL WINE
CO., LLC a California Corporation;
GOLDEN STATE VINTERS, a
California Corporation; VARNI
BROTHERS, CORP., a California
Corporation; TREASURY WINES
ESTATES AMERICAS CO., a California
Corporation; TREASURY WINES
ESTATES HOLDING, INC., a California
Corporation; BERINGER VINEYARDS,
a California Corporation; SEAGLASS
WINE CO., a California Corporation;
CONSTELLATION WINES, US, a
California Corporation; SMITH & HOOK
WINERY CORPORATION, a/k/a
SMITH AND HOOK, a California
Corporation, d/b/a HAHN FAMILY
WINES, a California Corporation;
RAYMOND VINEYARD AND
CELLAR, INC., a California
Corporation; JEAN-CLAUDE BOISSET
WINES, USA, INC., a California
Corporation; FETZER VINEYARDS, a
California Corporation; F. KORBEL &

BROS., INC., a California Corporation;
MEGAN MASON AND RANDY
MASON, d/b/a MASON CELLARS, a
California Corporation; OAKVILLE
WINERY MANAGEMENT CORP., GP,
a California Corporation;
WOODBRIDGE WINERY, INC., a
California Corporation; SIMPLY NAKED
WINERY, a California Corporation;
WINERY EXCHANGE, INC., a
California Corporation; SONOMA WINE
CO., LLC, a California Corporation;
DON SEBASTIANI & SONS
INTERNATIONAL WINE
NEGOCIANTS, CORP., a California
Corporation; and DON SABASTIANI &
SONS INTERNATIONAL WINE
NEGOCIANTS, a California Corporation;
BRONCO WINE COMPANY, a
California Corporation; TRADER JOE'S
COMPANY, a California Corporation,
and DOES 1-200, Inclusive,

            *Defendants*.

## CLASS ACTION COMPLAINT

Plaintiffs, Tacarra Washington, Latanja Johnson, Bernard Johnson, and George Thomas,

("hereinafter collectively referred to as Plaintiffs"), individually, and on behalf of all other

similarly situated persons (hereinafter "the Class"), by and through their undersigned counsel,

bring this Class Action Complaint against the above named Defendants, (hereinafter collectively

referred to as "Defendants").

### SUMMARY OF THE CASE

1.      Inorganic arsenic is an odorless, colorless, and highly toxic poison known to

cause illness and death when ingested by humans.

2.     California wines are among the most popular and widely consumed wines in the world. The majority of responsible California wineries, through choice of the proper grapes/juice, proper filtering processes and the use of proper equipment, limit the amount of inorganic arsenic present in their wines to "trace" levels considered acceptable (if not completely safe) for human consumption. However, three separate testing laboratories skilled in arsenic testing have now independently confirmed that several California wineries (including those named as Defendants in this action) instead produce and market wines that contain dangerously high levels of inorganic arsenic, in some cases up to 500% or more than what is considered the maximum acceptable safe daily limit. Put differently, just a glass or two of these arsenic-contaminated wines a day over time could result in dangerous arsenic toxicity to the consumer.

3.     Despite the known dangers/risks associated with human ingestion of this highly toxic poison, and despite the fact that the responsible wineries have been able to limit inorganic arsenic levels in their wines to acceptable legal limits through responsible wine making and filtering procedures, the Defendant wineries do not and instead distribute, and or/sell these arsenic-contaminated wines and conceal and do not disclose, warn, or otherwise advise, to their customers or to the ultimate consumers, the existence and/or the dangers/risks posed by the toxic excessive levels of inorganic arsenic contamination in their wine.

4.     Defendants' sale of arsenic-contaminated wine violates the laws of all fifty (50) States and Federal laws and standards, poses a risk to the public, and unfairly undercuts those wine makers and sellers who do not make or sell arsenic tainted wines. Responsible California Wineries who do have proper methods and processes in place to reduce inorganic arsenic to acceptable levels are unable to compete at the same price point in the wine market with those wineries who choose instead not to implement the proper methods and processes (and incur the

costs thereof) to ensure their wine customers are not exposed to dangerous levels of inorganic arsenic from their contaminated wines.

5.      For years, Defendants have long known and/or should have known about the serious health risks posed to their consumers by failing to limit and reduce the amount of highly toxic inorganic arsenic in the offending wines. Yet instead of reducing the exposure to acceptable levels as responsible wineries have done, Defendants have knowingly and recklessly engaged in a consistent pattern and practice of selling arsenic-contaminated wine to Florida consumers, without disclosing either the existence of the toxin in their product, or the health risks it posed, thereby secretly poisoning wine consumers in direct violation of the laws of all 50 States and Federal law.

6.      This is a consumer class action that seeks, among other things, injunctive relief, civil penalties, disgorgement, and damages to remedy several years of Defendants' negligent, reckless and/or knowing sale of inorganic arsenic contaminated wines, as well as Defendants' failure to warn wine consumers of the existence of, and dangerous/risks associated with, consuming inorganic arsenic when they drink Defendants' contaminated wines. Plaintiffs, further allege that Defendants are also in violation of the laws of all 50 States and Federal law for the years prior and subsequent to the vintage identified for each wine as provided herein.

7.      It has been known, at least since 1987, that exposure to inorganic arsenic causes cancer and causes and/or contributes to a hose of other debilitating/fatal diseases. This action further seeks to remedy Defendants' unfair, misleading and deceptive conduct, and to ensure that all wine consumers are, at the very least, warned that they are being exposed to toxic levels of inorganic arsenic before purchasing and/or consuming any of the Defendants' wine.

## PARTIES

8.      Plaintiffs are residents of Tallahassee, Florida.

9.      Plaintiff, Tacarra Washington, purchased the following wine brands: Seaglass (manufactured by Trinchero), Arrow Creek (manufactured by winery Exchange), Tribuno (manufactured by The wine Group), Bandit (manufactured by Trinchero), Beringer (manufactured by Treasury wine Estates), wine Cube (manufactured by Constellation) and Colores Del Sol (manufactured by Treasure wine Estates).  Plaintiff purchased wine products manufactured and sold by the Defendants, in Tallahassee or Leon County within the four years preceding the filing of this action (the "Class Period").  Plaintiff purchased said brands of wines, including various varietals within each brand, without information or knowledge that these brands contained arsenic levels significantly higher than levels approved by the EPA for drinking water.  Had Plaintiff known the true arsenic levels of these brands, Plaintiff would not have purchased these brands, or paid a premium price for these brands.

10.      Plaintiff, Latanja Johnson, purchased the following wine brands: Smoking Loon (manufactured by Don Sebastiani and Sons), Concannon (manufactured by The wine Group), , Pomelo (manufactured by Mason Cellars), Cupcake (manufactured by The wine Group), Trapiche (manufactured by The wine Group), Flip Flop (manufactured by The wine Group), Bay Bridge (manufactured by The wine Group), Foxhorn (manufactured by The wine Group), and. Plaintiff purchased wine products manufactured and sold by the Defendants, in Tallahassee or Leon County within the four years preceding the filing of this action (the "Class Period"). Plaintiff purchased said brands of wines, including various varietals within each brand, without information or knowledge that these brands contained arsenic levels significantly higher than levels approved by the EPA for drinking water.  Had Plaintiff known the true arsenic levels of

these brands, Plaintiff would not have purchased these brands, or paid a premium price for these brands.

11.     Plaintiff, Bernard Johnson, purchased the following wine brands: Corbett Canyon (manufactured by The wine Group),Fetzer (manufactured by Fetzer wineyards)), HRM Rex Goliath (manufactured by Constellation), Korbel (manufactured by Korbel), Cook's (manufactured by Constellation), Meage A Trois (manufactured by Trinchero), Mogen David (manufactured by The wine Group), Oak Leaf (manufactured by The wine Group), , R. Collection By Raymond (manufactured by Jean-Claude Boisset wines), and Richards Wild Irish Horse (manufactured by Contellation).  Plaintiff purchased wine products manufactured and sold by the Defendants, in Tallahassee or Leon County within the four years preceding the filing of this action (the "Class Period").  Plaintiff purchased said brands of wines, including various varietals within each brand, without information or knowledge that these brands contained arsenic levels significantly higher than levels approved by the EPA for drinking water.  Had Plaintiff known the true arsenic levels of these brands, Plaintiff would not have purchased these brands, or paid a premium price for these brands.

12.     Plaintiff, George Thomas, purchased the following wine brands: Acronym (manufactured by winery Exchange), Simply Naked (manufactured by Constellation), Glen Ellen (manufactured by The wine Group), Franzia (manufactured by The wine Group), Sutter Home (manufactured by Trinchero), Hawkstone (manufactured by The wine Group), Almaden (manufactured by The wine Group), Vendage (manufactured by Constellation), and Charles Shaw (manufactured by Bronco). Plaintiff purchased wine products manufactured and sold by the Defendants, in Tallahassee or Leon County within the four years preceding the filing of this action (the "Class Period").  Plaintiff purchased said brands of wines, including various varietals

within each brand, without information or knowledge that these brands contained arsenic levels significantly higher than levels approved by the EPA for drinking water.  Had Plaintiff known the true arsenic levels of these brands, Plaintiff would not have purchased these brands, or paid a premium price for these brands.

13.     Defendants The Wine Group, Inc., and The Wine Group, LLC, (collectively, "Franzia") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and the Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Franzia defendants sell, distributed and/or sold the following varietals of **Franzia** wine: *Vintner Select White Grenache, White Zinfandel, Vintner Select White Merlot, and Vintner Select Burgundy.*

14.     Defendants Sutter Home Winery, Inc., d/b/a, Trinchero Family Estates and Folie a Deux Winery (collectively, "Ménage à Trois") sell and/or distribute wine in Florida and throughout the United States. Sutter Home Winery, Inc., d/b/a, Trinchero Family, is a parent company, with its principal place of business located at 100 St. Helena Highway South Street, Helena, California; and Folie a Deux Winery, is a subsidiary company, with its principal place of business located at 7481 St. Helena Highway, Oakville California. Ménage à Trois defendants sell, distributed and/or sold the following varietals of **Ménage à Trois** wine: *Pinot Grigio, Moscato, White Blend, Chardonnay, Rose, Cabernet Sauvignon, and California Read Wine.*

15.     Defendants Sutter Home Winery, Inc., d/b/a, Trinchero Family Estates and California Natural Products (collectively, "Wine Cube") sell and/or distribute wine in Florida and throughout the United States. Sutter Home Winery, Inc., d/b/a, Trinchero Family, is a parent company, with its principal place of business located at 100 St. Helena Highway South Street,

Helena, California; and California Natural Products, is a subsidiary company, with its principal place of business located at 1250 East Lathrop Road, Lathrop, California. Wine Cube defendants sell, distributed and/or sold the following varietals of **Wine Cube** wine: *Moscato, Pink Moscato, Pinot Grigio, Chardonnay, Red Sangria, Sauvignon Blanc, and Cabernet Sauvignon/Shiraz.*

16.    Defendants Sutter Home Winery, Inc., d/b/a, Trinchero Family Estates, Rebel Wine Co., LLC, and California Natural Products (collectively, "Bandit") sell and/or distribute wine in Florida and throughout the United States. Sutter Home Winery, Inc., d/b/a, Trinchero Family, is a parent company, with its principal place of business located at 100 St. Helena Highway South Street, Helena, California; Rebel Wine, is a subsidiary company, with its principal place of business located at 100 St. Helena Highway South Street, Helena, California; and California Natural Products, is a subsidiary company, with its principal place of business located at 1250 East Lathrop Road, Lathrop, California. Bandit defendants sell, distributed and/or sold the following varietals of **Bandit** wine: *Pinot Grigio, Chardonnay, and Cabernet Sauvignon.*

17.    Defendants Sutter Home Winery, Inc., d/b/a, Trinchero Family Estates, and California Natural Products (collectively, "Sutter Home") sell and/or distribute wine in Florida and throughout the United States. Sutter Home Winery, is a parent company, with its principal place of business located at 100 St. Helena Highway South Street, Helena, California; and California Natural Products is a subsidiary company, with its principal place of business located at 1250 East Lathrop Road, Lathrop, California. Sutter Home defendants sell, distributed and/or sold the following varietals of **Sutter Home** wine: *Sauvignon Blanc, Gewurztraminer, Pink Moscato, Pinot Grigio, Moscato, Chenin Blanc, Sweet Red, Riesling, White Merlot, Merlot, White Zinfandel, and Zinfandel.*

8

18.     Defendants The Wine Group, Inc., and The Wine Group, LLC (collectively, "Mogen David") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Mogen David defendants sell, distributed and/or sold the following varietals of **Mogen David** wine: *Concord, and Blackberry Wine.*

19.     Defendants The Wine Group, Inc., and The Wine Group, LLC (collectively, "Concannon") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Cocannon defendants sell, distributed and/or sold the following varietals of **Cocannon** wine: *Glen Ellen Reserve Pinot Grigio, Selected Vineyards Pinot Noir, and Glen Ellen Reserve Merlot.*

20.     Defendants The Wine Group, Inc., and The Wine Group, LLC and Varni Brothers, Corp. (collectively, "Flipflop") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and Varni Brothers Corp., is a company, with its principal place of business located at 400 Hosmer Ave., Modesto, California. Flipflop defendants sell, distributed and/or sold the following varietals of **Flipflop** wine: *Pinot Grigio, Moscato, and Cabernet Sauvignon.*

21.     Defendants Treasury Wines Estates Americas Co., Treasury Wines Estates Holding, Inc. and Beringer Vineyards (collectively, "Beringer") sell and/or distribute wine in Florida and throughout the United States. Treasury Wines Estates Americas Co., is a parent company, with its principal place of business located at 610 Air Park Road, Napa, California; Treasury Wines Estates Holding, Inc., is an ultimate parent company, with its principal place of business located at PO Box 4500, Napa, California; and Beringer Vineyards, is a company, with its principal place of business located at 2000 Main St., St. Helena, California. Beringer defendants sell, distributed and/or sold the following varietals of **Beringer** wine: *White Merlot, White Zinfandel, Red Moscato, and Refreshingly Sweet Moscato.*

22.     Defendants Sutter Home Winery, Inc., d/b/a, Trinchero Family Estates, and SeaGlass Wine Co. (collectively, "SeaGlass") sell and/or distribute wine in Florida and throughout the United States. Sutter Home Winery, Inc., d/b/a, Trinchero Family, is a parent company, with its principal place of business located at 100 St. Helena Highway South Street, Helena, California; and SeaGlass Wine Co. is a company, with its principal place of business located at PO Box 248, St. Helena, California. SeaGlass defendants sell, distributed and/or sold the following varietals of **SeaGlass** wine: *Sauvignon Blanc.*

23.     Defendants The Wine Group, Inc., and The Wine Group, LLC (collectively, "Tribuno") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Tribuno defendants sell, distributed and/or sold the following varietals of **Tribuno** wine: *Sweet Vermouth.*

24.     Defendants Constellation Wines, US and Smith & Hook Winery Corporation, a/k/a Smith and Hook, d/b/a Hahn Family Wines (collectively, "HRM Rex-Goliath") sell and/or distribute wine in Florida and throughout the United States. Constellation Wines, US, is a company, with its principal place of business located at 801 Main Street, St. Helena, California; Hahn Family Wines, is a company, with its principal place of business located at 700 California Boulevard, Napa, California; and Smith & Hook Winery Corporation, a/k/a Smith and Hook, is a company, with its principal place of business located at 37700 Foothill Road (Drawer C), Soledad, California. HRM Rex-Goliath defendants sell, distributed and/or sold the following varietals of **HRM Rex-Goliath** wine: *Moscato*.

25.     Defendant Fetzer Vineyards (individually, "Fetzer") sells and/or distributes wine in Florida and throughout the United States. Fetzer Vineyards, is a subsidiary, with its principal place of business located at 12901 Old River Road, Hopland, California. Defendant Fetzer sells, distributed, and/or sold the following varietals of Fetzer wine: Moscato, and Pinot Grigio. Defendant F. Korbel & Bros., Inc., (individually, "Korbel") sells and/or distributes wine in Florida and throughout the United States. F. Korbel & Bros., Inc., is a company, with its principal place of business located at 13250 River Road, Guerneville, California. Defendant Korbel sells, distributed, and/or sold the following varietals of **Korbel** wine: *Sweet Rose Sparkling Wine, and Extra Dry Sparkling Wine.*

26.     Defendants The Wine Group, Inc., and The Wine Group, LLC (collectively, "Corbett Canyon") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Corbett Canyon

defendants sell, distributed and/or sold the following varietals of **Corbett Canyon** wine: *Pinot Grigio, and Cabernet Sauvignon.*

27.    Defendants Megan Mason and Randy Mason, d/b/a Mason Cellars and Oakville Winery Management Corp., GP (collectively, "Pomelo") sell and/or distribute wine in Florida and throughout the United States. Megan Mason and Randy Mason, d/b/a Mason Cellars, is a parent company, with its principal place of business located at 5 Heritage Court, Yountville, California; and Oakville Winery Management Corp., is a company, with its principal place of business located at PO Box 434, Oakville, California. Pomelo defendants sell, distributed and/or sold the following varietals of **Pomelo wine**: *Sauvignon Blanc.*

28. Defendants Constellation Wines, US, Woodbridge Winery, Inc., and Simply Naked Winery (collectively, "Simply Naked") sell and/or distribute wine in Florida and throughout the United States. Constellation Wines, US, is a company, with its principal place of business located at 801 Main Street, St. Helena, California; Woodbridge Winery, Inc., is a company, with its principal place of business located at 1649 E Victor Rd, 1C, Lodi, California; and Simply Naked Winery, is a company, with its principal place of business located in Acampo, California. Simply Naked defendants sell, distributed and/or sold the following varietals of **Simply Naked** wine: *Moscato.*

29.    Defendants Winery Exchange, Inc., and Sonoma Wine Co., LLC (collectively, "Acronym") sell and/or distribute wine in Florida and throughout the United States. Winery Exchange, Inc., is a company, with its principal place of business located at 500 Redwood Blvd., Ste. 200, Novato California; and Sonoma Wine Co., LLC, is a limited liability company, with its principal place of business located at 9119 Graton Road, Graton, California. Acronym defendants distributed and/or sold the following varietals of **Acronym** wine: *Gr8rw Red Blend.*

30.     Defendants Constellation Wines, US and California Natural Products (collectively, "Vendange") sell and/or distribute wine in Florida and throughout the United States. Constellation Wines, US, is a company, with its principal place of business located at 801 Main Street, St. Helena, California; and California Natural products, upon information and belief, is a company, with its company, with its principal place of business located at 1250 East Lathrop Road, Lathrop California. Vendange defendants distributed and/or sold the following varietals of **Vendange** wine: *Merlot; White Zinfandel*.

31.     Defendant Constellation Wines, US (individually, "Cooks") sells and/or distributes wine in Florida and throughout the United States. Constellation wines, US, is a company, with its principal place of business located at Main Street, St. Helena, California. Cooks defendant distributed and/or sold the following varietals of **Cooks** wine: *Spumante*.

32.     Defendants The Wine Group, Inc., The Wine Group, LLC, Constellation Wines, US, (collectively, "Almaden") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and Constellation Wines, US, is a company, with its principal place of business located at 801 Main Street, St. Helena, California. Almaden defendants distributed and/or sold the following varietals of **Alamaden** wine: *Heritage White Zinfandel; Heritage Moscato; Heritage Chardonay; Mountain Burgundy; Mountain Rhine; Mountain Chablis*.

33.     Defendants The Wine Group, Inc., and The Wine Group, LLC, (Collectively, "Oak Leaf") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy

Blvd., Tracy, California; and The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Oak Leaf defendants distributed and/or sold the following varietals of **Oak Leaf** wine: *White Zinfandel*.

34.     Defendants The Wine Group, Inc., and The Wine Group, LLC, (collectively, "Foxhorn") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and The Wine group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Foxhorn defendants distributed and/or sold the following varietals of **Foxhorn** wine: *White Zinfandel*.

35.     Defendants the Wine group, Inc., and The Wine Group, LLC, (collectively, "Trapiche") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and The Wine Group, LLC, upon information and belief, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Trapiche defendants distributed and/or sold the following varietals of **Trapiche** wine: *Malbec*.

36.     Defendants the Wine Group, Inc., The Wine Group, LLC, and Golden State Vintners (collectively, "Fisheye") sell and/or distribute wine in Florida and throughout the United States and the world. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and Golden State Vintners, is a parent company, with its principal place of

business located at 4596 South Tracy Blvd., Tracy, California. Fisheye defendants distributed and/or sold the following varietals of **Fisheye** wine: *Pinot Grigio*.

37.     Defendants The Wine Group, Inc., and The Wine Group, LLC, (Collectively, "Bay Bridge") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Bay Bridge defendants distributed and/or sold the following varietals of **Bay Bridge** wine: *Chardonay*.

38.     Defendants The Wine Group, Inc., and The Wine Group, LLC, (Collectively, "Cupcake") sell and/or distribute wine in Florida and throughout the United States. The Wine Group, Inc., is a parent company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California; and The Wine Group, LLC, is a limited liability company, with its principal place of business located at 4596 South Tracy Blvd., Tracy, California. Cupcake defendants distributed and/or sold the following varietals of **Cupcake** wine: *Malbec*.

39.     Defendants Treasury Wines Estates Americas Co., and Treasury Wines Estates Holding, Inc., (Collectively, "Colores Del Sol") sell and/or distribute wine in Florida and throughout the United States. Treasury Wines Estates Americas Co., is a parent company, with its principal place of business located at 610 Air Park Road, Napa, California; and Treasury Wines Estates Holding, Inc., is an ultimate parent company, with its principal place of business located at PO Box 4500, Napa, California. Colores Del Sol defendants distributed and/or sold the following varietals of **Colores Del Sol** wine: *Malbec*.

40.     Defendant Winery Exchange, Inc., (individually, "Arrow Creek") sells and/or distributes wine in Florida and throughout the United States. Winery Exchange, Inc., is a

company, with its principal place of business located at 500 Redwood Blvd., Ste. 200, Novato, California. Defendant Arrow Creek distributed and/or sold the following varietals of **Arrow Creek** wine: *Coastal Series Cabernet Sauvignon*.

41.     Defendant Winery Exchange, Inc., (individually, "Hawkstone") sells and/or distributes wine in Florida and throughout the United States. Winery Exchange, Inc., is a company, with its principal place of business located at 500 Redwood Blvd., Ste. 200, Novato, California. Defendant Hawkstone defendant distributed and/or sold the following varietals of **Hawkstone** wine: *Cabernet Sauvignon*.

42.     Defendant Constellation Wines, US, (individually, "Richards Wild Irish Rose") sells and/or distributes wine in Florida and throughout the United States. Constellation Wine, US, is a company, with its principal place business located at 801 Main Street, St. Helena, California. Richard Wild Irish Rose defendant distributed and/or sold the following varietals of **Richard Wild Irish Rose** wine: *Red Wine*.

43.     Defendants Don Sebastiani & Sons International Wine Négociants, Corp., and Don Sebastiani & Sons International Négociants (Collectively, "Smoking Loon") produce, manufacture, sell and/or distribute wine in Florida and throughout the United States. Don Sebastiani & Sons International Wine Négociants, Corp., is a company, with its principal place of business located at 485 1st West, Sonoma, California; and Don Sebastiani & Sons International Wine Négociants, is a parent company, with its principal place of business located at 520 Airport Road, Napa, California. Smoking Loon defendants distributed and/or sold the following varietals of **Smoking Loon** wine: *Viognier*.

44.     Defendants Bronco Wine Company, and trader Joe's Company (collectively, "Charles Shaw") sell and/or distribute wine in Florida and throughout the United States. Bronco

Wine Company, is a parent company, with its principal place of business located at 6342 Bystrum Road, Ceres, California; and trader Joe's Company, is a company, with its principal place of business located at 800 S, Shamrock Ave., Monrovia, California. Charles Shaw defendants distributed and/or sold the following varietals of **Charles Shaw** wine: *White Zinfandel*.

45.     Defendants Jean-Claude Boisset Wines, USA Inc., and Raymond Vineyard and Cellar/Raymond Vineyard and Cellar, Inc., (Collectively, "R. Collection by Raymond") sell and/or distribute wine in Florida and throughout the United States and the world. Jean-Claude Boisset Wines, USA Inc., is a subsidiary company, with its principal place of business located at 849 Zinfandel Lane, Saint Helena, California; and Raymond Vineyard and Cellar/Raymond Vineyard and Cellar, Inc., are subsidiary companies, with their principal place of business located at 849 Zinfandel lane, Saint Helena, California. R. Collection by Raymond defendants distributed and/or sold the following varietals of **R. Collection by Raymond** wine: *Chardonay*.

46.     Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 200, inclusive and therefore sue such defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Doe defendants are legally responsible is some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiffs and members of the Class.

47.     As sued herein, "Defendants" shall mean the above-named Defendants, including all entities through which they do business and its predecessors, successors, affiliates,

representatives, attorneys, employees, and/or assigns who, in concert and/or acting as agents for one another engaged in the conduct complained of herein.

## JURISDICTION AND VENUE

48.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, because the proposed Class consists of 100 or more members, and minimal diversity exists.

49.     This Court has personal jurisdiction over the Defendants because they are authorized to do business and in fact do business in this district and have sufficient minimum contacts with this district, and/or each Defendant otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its wine products in this district, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

50.     Venue is proper in this District pursuant to 28 U.S.C. § 139(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS RELEVANT TO ALL CLAIMS.

51.     According to the Wine Institute, in 2013, California wine shipments within the United States alone were 215 million cases – 2,580,000,000 bottles of wine with an estimated retail value of $23.1 billion.

52.     California wineries typically do not disclose the ingredients or chemicals (beyond alcohol content and sulfites) that are present in the wine they are selling. Moreover, no government regulatory agency is regularly monitoring or testing these wines to ensure they are

free from toxic poisons that could sicken or kill consumers over time. Specifically, no government agency is regularly testing wine for toxic ingredients such as inorganic arsenic, leaving the wineries to police their own wines, and wine consumers to fend for themselves, without regulatory protection or the necessary warnings to make an informed decision.

53.     Wine may contain both organic and inorganic arsenic. Of these, inorganic arsenic is substantially more toxic and dangerous to humans. Based upon independent sample testing on the wines at issue in this complaint, inorganic arsenic makes up the overwhelming majority of the arsenic in these wines. Inorganic arsenic is: (1) acutely toxic when introduced into the human body; (2) proven to cause cancer; (3) known to cause and contribute to a host of debilitating illness, and (4) when consumed over time, increases the likelihood of early death. The World Health Organization classifies inorganic arsenic as a "MAJOR PUBLIC HEALTH CONCERN." Ingestion of arsenic can cause nausea, vomiting abdominal pain, severe diarrhea, disturbances of the cardiovascular and nervous systems, and eventual death Chronic arsenic toxicity results in multi-system disease and has been linked to a variety of dermal symptoms (exfoliate dermatitis, keratosis, vitiligo, skin cancer), peripheral neuropathy, encephalopathy, bronchitis, pulmonary fibrosis, portal hypertension, peripheral vascular disease/"black foot disease," atherosclerosis, various cancers (including skin, bladder, lung, liver, kidney, nasal, passage, prostate and colon cancer) and diabetes mellitus.

54.     Along with alarming carcinogenicity of arsenic and its implication in multiple cancers (including skin, bladder, lung, liver, kidney, nasal passages, prostate and colon), comes the very real concern which has been identified in medical literature between arsenic toxicity, type 2 diabetes mellitus and obesity. This association is of the utmost importance, as incidence and prevalence of type 2 diabetes and obesity have reached epidemic proportions representing a

public health emergency. Specifically, the U.S. Center for Disease Control projects that 1 in 3 of children born in the year 2000 will become diabetic in their lifetime, and 1 in 2 among Hispanic females.

55.     While inorganic arsenic is considered to be more toxic than organic arsenic, several methyl and phenyl derivatives of arsenic such as monomethylarsonic acid (MMA), and dimethyl arsenic acid (DMA) are of possible health concern as per the Agency for Toxic Substances and Disease Registry (ATSDR) 2007 Toxicological Profile for Arsenic (1). The International Agency for Research on Cancer has classified arsenic as a Class I Human carcinogen. The U.S. Environmental Protection Agency clearly states that the maximum contaminant level goal (MCLG) for any arsenic is zero, based on the best available science to prevent potential health problems. The resulting maximum contaminant level (MCL), which represents the enforceable target level for arsenic in water, considers cost and feasibility and was set at 10 ppb. Of note, this measurement is for total arsenic and does not consider or require any specification analysis of organic versus inorganic.

56.     Defendants manufacture and/or distribute wines labeled, marketed and intended for immediate human consumption (without being made a constituent or ingredient of another product, nor requiring substantial additional preparation), including but not limited to the wines referenced herein. These wines are distributed and/or sold in all 50 States, including Florida.

57.     Defendants distributes and sells wine in all 50 States, including Florida,that contains inorganic arsenic in amount far in excess of what is allowed in drinking water. Defendants do not warn that their products contain unsafe amounts of inorganic arsenic, nor do they disclose even the existence of inorganic arsenic in the wine. Consequently, Defendants' wine consumers have been made unwitting "guinea pigs" of arsenic exposure, being involuntary

exposed to toxic levels of inorganic arsenic over and over again by the Defendants. Even today, with the sophisticated testing equipment available to wine makes and distributors, Defendants still conceal and/or refuse to warn the typical wine consumer about the true risks they are taking by ingesting and consuming their product.

58.     The wines at issue in this case contain toxic inorganic arsenic at levels that exceed California standards, resulting in human ingestion/exposure to Class I carcinogens without any disclosure or warning to the consumer.

59.     Inorganic arsenic has long been known to be toxic to humans and acceptable limits of inorganic arsenic in food and drink have been repeatedly lowered over the years. It is now well-understood that even very small amounts of inorganic arsenic can be harmful to humans.

60.     During the four years preceding the filling of this complaint, Defendants sold, and Plaintiffs and the other members of the Class purchased Defendants' wine, described above.

61.     Plaintiffs and other similarly situated consumers bought the wine primarily for personal, family, or household purchases. Defendants know and intend that individuals will consume their wines.

62.     The named Defendants sell and distribute wine to consumers at inorganic arsenic levels significantly higher than what the State of California considers the maximum acceptable limit for safe daily exposure.

63.     Each of the Defendants sells and/or distribute wine containing toxic levels of inorganic arsenic, yet Defendants have failed, and continue to fail, to comply with state health law standards or to provide the wine consumer with any warning of this fact. Defendants actually knew and/or should have known of the toxic levels of inorganic arsenic in their wines, yet

continued to manufacture and/or distribute their toxic wine without disclosing or warning of that fact, instead actively concealing such information from the general public.

64.     Defendants' marketing and advertising of their wines was, and continues to be unfair, untrue, deceptive and misleading. This conduct includes, but is not limited to:

(a)     Failing to warn that Defendants' wine contains inorganic arsenic, a chemical known to cause cancer and other serious illnesses;

(b)     Failing to warn that Defendants' wine contains levels of inorganic arsenic widely considered to be unsafe and inappropriate for human consumption;

(c)     Representing to Plaintiffs and similarly situated consumers and the general public that Defendants' wine were safe and fit for human use, knowing that said representations were false, and concealing from Plaintiffs and similarly situated consumers and the general public that its wine contains inorganic arsenic;

(d)     Engaging in advertising programs designed to create the image, impression and belief by consumers that Defendants' wines are safe and fit for human use, even though Defendants knew this to be false, and even though Defendants' had no reasonable grounds to believe them to be true; and

(e)     Purposefully downplaying and understanding the health hazards and risks associated with Defendants' wines.

65.     Defendants could have taken measures to limit or reduce the amount of inorganic arsenic levels in the offending wines to allowable levels, but did not do so in order to enjoy additional profits at the expense of the wine consumer.

66.     But for Defendants' unfair, untrue, deceptive and misleading conduct, Defendants would not have been able to sell the wine and Plaintiffs and other similarly situated consumers would not have purchased the wine.

67.     But for Defendants' unfair untrue, deceptive and misleading conduct, Defendants would have to warn consumers of the inorganic arsenic in its wine or take steps in the manufacturing of the wine to prevent unsafe levels of inorganic arsenic from getting into the wine or to reduce the unsafe levels of inorganic arsenic in the wine.

68.     Plaintiffs and all other consumers similarly situated are therefore entitled to damages and full restitution of their purchase of Defendants' wines. All Plaintiffs, and all others similarly situated are also entitled to injunctive relief to prevent the continued sale of wine with excessive levels of inorganic arsenic. In addition, all consumers of Defendants' wines who were denied the ability to make a knowing choice as to whether to purchase the wines with excessive levels of inorganic arsenic should be refunded the full purchase price of the wines.

69.     As a result of Defendants' conduct described above, Plaintiffs and the Class have in fact suffered economic injuries and lost money, including the purchase price of the wine, as described herein.

70.     The safe harbor doctrine will not shield Defendants from liability.  The safe harbor provision states, "the relevant analysis…is whether…the moving party has demonstrated that a specific federal or state law affirmatively authorized it to engage in the conduct alleged…not whether [the plaintiffs] have demonstrated that [the defendants'] conduct violates a specific rule or regulation." *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.,* 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (emphasis added). To succeed, Defendants must demonstrate that federal or state law permits the specific

practice at issue; it is not sufficient for the defendants merely to show that the federal or state government, or an agency thereof, has regulated generally in the area. *See Peters v. Keyes Co*., No. 10-60162-CIV, 2010 WL 1645095, at *4 (S.D. Fla. Apr. 21, 2010).

71.     The "safe harbor" defense does not apply to federal actions which does not rise to the level of federal law, much in the same way as preemption. *See In re Horizon Organic milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F.Supp.2d 1311, 1347. ("The FDA's statement that "[b]ased on the information [WhiteWave has] provided, [the FDA] *would not object at this time to the DHA claims* regarding brain and eye health … does not constitute approval of WhiteWave's brain health representations by the FDA. Moreover, even if the letter could be construed as approval, statements made by the FDA in a letter to a corporation about its products are insufficient to accord those statements the weight of federal law to invoke the safe harbor provisions of the consumer fraud statute.") (*Emphasis in original).*

72.     The TTB has made clear that an "approval" of a label does not mean the label is in "compliance" with all TTB regulations. The TTB's mission is to protect the public which includes ensuring that labels on alcohol beverages contain adequate descriptive information and are not likely to mislead consumers.

73.     Established in 2008, TTB's Alcohol Beverage Sampling Program (ABSP) is a random survey of products in the marketplace to evaluate our success in meeting this mission and to determine where compliance issues exist. [1] Each year the TTB conducts the ABSP by purchasing products from the marketplace and brings them to their offices for label assessments to determine if products are in compliance with its own labeling regulations. Following the label

---

[1] http://ttb.gov/sampling/index.shtml

assessments, the TTB sends the products to their laboratories to undergo a series of analyses to determine compliance with certain information displayed on the product labels. *Id.*

74.     In 2014, the TTB selected 190 distilled spirits, 155 malt beverages, and 105 wines for the 2014 ABSP, with 450 total products included in the survey. After analyzing these products, the TTB found 139 products that were non-compliant. By commodity, the TTB found that 73 distilled spirits products, 46 malt beverage products, and 20 wine products were non-compliant with current TTB regulations, even though these labels were initially "approved" by the TTB. [2]

75.     In 2013, the TTB selected 275 distilled spirits, 239 malt beverages, and 154 wines for the 2013 ABSP, with 668 total products included in the survey. After analyzing these products, the TTB found 190 products that were non-compliant. By commodity, the TTB found that 80 distilled spirits products, 73 malt beverage products, and 37 wine products were non-compliant, even though these labels were initially "approved" by the TTB. [3]

76.     In 2012, the TTB selected 246 distilled spirits, 206 malt beverages, and 196 wines for the 2012 ABSP, with 642 total products included in the survey.  After analyzing these products, we found 158 products that were non-compliant. By commodity, we found that 85 distilled spirits products, 40 malt beverage products, and 33wine products were non-compliant, even though these labels were initially "approved" by the TTB. [4]

## CLASS ACTION ALLEGATIONS

77.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

---

[2] http://ttb.gov/pdf/2015-01-07-fy2014-results.pdf
[3] http://ttb.gov/pdf/2014-02-10-fy2013-results.pdf
[4] http://ttb.gov/pdf/2012absp-results.pdf

> All persons in the United States who, within the Class Period, purchased Defendants' wine products and brands as identified herein (the "Class").

78. Alternatively, Plaintiff brings this action on behalf of the following class: All persons in Florida who, within the Class Period, purchased Defendants' wine products and brands as identified herein.

79. The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

80. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

81. **Numerosity:** Based upon Defendants' publicly available sales data with respect to Defendants' wine, it is estimated that the Class numbers are potentially in the millions, and the joinder of all Class members is impracticable.

82. **Common Questions Predominate:** The action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right to each Class member to recover. Questions of law and fact common to each Class member include, for example:

a. Whether Defendants engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Defendants' wine sold to consumers;

b. Whether the product at issue is misbranded or unlawfully packaged and labeled as a matter of law;

c.      Whether Defendants made unlawful and misleading claims regarding Defendants'

wine;

d.      Whether Defendants violated Florida's Consumer Protection Statues §501.201-

§501.213; Florida Deceptive and Unfair Trade Practice Act; Florida Intentional False

Advertising Statute §817.44; Breach of Express Warranty Pursuant to §672.313 Florida Statues;

Merchantability; Usage of Trade Pursuant to §§672.314-672.315 Florida Statues; Breach of

Implied Warranty pursuant to Uniform Commercial Code §2-314; the Florida Food Safety Act;

or the FDCA and regulations promulgated thereunder;

e.      Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f.      Whether Defendants' unlawful, unfair and/or deceptive practices harmed

Plaintiffs and the Class; and

g.      Whether Defendants were unjustly enriched by their deceptive practices.

83.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class because

Plaintiffs purchase Defendants' products during the Class Period. Defendants' unlawful, unfair,

and fraudulent actions concern the same business practices described herein irrespective of

where they occurred or were experienced. The injuries of each member of the Class were caused

directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants'

misconduct is common to all Class members and represents a common thread of misconduct

resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices

and course of conduct that give rise to the claims of the Class members and a based on the same

legal theories.

84.     **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class.

Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the

interests of the Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

85.     **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

86.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2), are met as Defendants have acted or refused to act on

grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

87.     The prerequisites to maintaining a class action pursuant to Fed R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members, predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

88.     Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

89.     Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the Class members' claims. Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs' claims are typical and representative of the Class.

90.     There are no unique defenses which may be asserted against Plaintiffs individually, as distinguished from the Class. The claims of Plaintiffs are the same as those of the Class.

91.     No conflicts of interest exist between Plaintiffs and the other Class members. Plaintiffs have retained counsel that is competent and experienced in complex class action litigation. Plaintiffs and their counsel will fairly and adequately represent and protect the interests of the Class.

92.     This class action is superior to any other method for the fair and efficient adjudication of this dispute.

**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF FLORIDA CONSUMER PROTECTION
STATUTES §501.201- §501.213, FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT**

93.     Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

94.     Defendants' conduct of intentionally concealing material facts regarding arsenic

levels in its wine constitutes unlawful, unfair and deceptive business acts and trade practices.

95.     Defendants sold its wine products in Florida and throughout the United States

during the Class Period.

96.     Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful,"

"fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the

reasons discussed above, Defendant has engaged in unfair, false, deceptive, untrue and

misleading advertising in violation of Fla. Stat. §§501.201-501.213 (2014).

97.     The Florida Deceptive and Unfair Trade Practices Act also prohibits any, "unfair

methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices in conduct of any trade or commerce." Defendant has violated Fla. Sat. §501.204's

prohibition against engaging in unlawful acts and practices by, *inter alia,* making the false and

deceptive representations, and also through its omissions of material facts, as set forth more fully

herein, and violating 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I),

49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A), and the

common law.

98.     Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

99.     Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014), in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributed to such conduct.

100.     As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers. Defendant's conduct constitutes violations of the public policies against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers as proscribed by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014).

101.     Defendants intended to deceive consumers about the arsenic levels in its wine products that exceed EPA standards for drinking water.

102.     Defendants' intentional concealment of material facts are likely to mislead a consumer acting reasonably in the circumstances into believing that the Defendants' product safe for consumption.

103.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

104.     Defendant's claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

105.     Defendant's deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs and Class members have suffered injury in fact, actual damages, and have lost money as a result of Defendant's unlawful, unfair and fraudulent conduct.  Plaintiffs' damages are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.  Defendant's deceptively labeled, and falsely advertised, and misbranded products have little to no market value.

106.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

107.     FDUTPA's safe harbor provision protects companies from consumer fraud suits resulting from attempts to comply with other state and federal laws.  It does not protect companies who receive the blessing of regulators by misrepresenting the veracity of their products' labels.  Accordingly, FDUTPA's safe harbor provision does not immunize Defendant's deceptive labeling.

108.     Plaintiffs in instant action are suing for conduct that violates the TTB and FDCA, thus Plaintiffs' claims are not preempted.  However, Plaintiffs are not suing *because* Defendants' conduct violates the TTB or FDCA.  Plaintiffs allege that Defendants' conduct violates Florida state law and Plaintiffs' claims do not exist "solely by virtue of the TTB or FDCA."  Plaintiffs' state law claims do not obstruct federal regulation of alcohol product labeling.

109.     Plaintiffs, on behalf of themselves, and all others similarly situated, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendant from containing such practices, corrective advertising, including providing notification of the product's health risks, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

## COUNT II

### VIOLATION OF FLORIDA MISLEADING ADVERTISING STATUTE §817.41

110.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

111.     §817.41, Fla. Stat. prohibits "any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

112.     Defendants intentionally concealed, still conceals, and makes false representations of material fact that they knew, or should have known, were false.

113.     By concealing and/or creating and disseminating the false and deceptive material facts described herein, Defendants have falsely represented to the public that their product is "safe" when in fact it is not safe as it contains significantly higher levels of arsenic than what the EPA allows in drinking water.

114.     Defendants concealed material facts and/or disseminated false representations of material fact with the intent to induce Plaintiffs, and other members of the Class, to purchase its products.

115.     The intentional concealment of material fact made by the Defendant were likely to deceive reasonable consumers.

116.     The Plaintiffs, and other members of the Class, did not have reason to know and did not know about the material facts concealed by the Defendants, and reasonably relied on the false representations of material fact made by the Defendants.

117.     Due to Defendant's concealment of material facts, and Plaintiffs' reliance on the false representations of material facts made by the Defendants, the Plaintiff, and other members of the Class, were deceived.

118.     As a direct and proximate cause of Defendants' violation of Florida Statute §817.41, Plaintiffs and the members of the Class, were injured when they paid good money for the Defendants' illegal and worthless products.

119.     As a result of Defendants' unlawful concealment of material facts, and false advertising practices, Plaintiffs and the members of the Class who purchased Defendants' products in Florida, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiffs and the members of the Class any money paid for the Defendants' product.

120.     Plaintiffs and the members of the Class are also entitled to costs, including reasonable attorney's fees.

121.     Under §817.41, Florida Statutes, Florida Plaintiffs and the members of the class are also entitled to be awarded punitive damages in addition to the actual damages proven.

## COUNT III

## VIOLATION OF FLORIDA INTENTIONAL
## FALSE ADVERTISING STATUTE §817.44

122.     Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

123.     Defendants knowingly and intentionally engaged in the fraudulent concealment

of material facts and in false advertising concerning the true arsenic levels in Defendants'

wine products. Defendants' conduct was consumer-oriented and this conduct had a broad

impact on consumers at large.

124.     Defendants' actions were unlawful and under the circumstances, Defendants

had actual knowledge of the concealment and falsity, or at the very least ought to have known

of the concealment and falsity thereof.

125.     Fla. Stat. § 817.44 (2014) defines "false advertising" as "invitations for offers

for the sale of any property, real or personal, tangible or intangible, or any services,

professional or otherwise, by placing or causing to be placed before the general public, by any

means whatever, an advertisement describing such property or services as part of a plan or

scheme with the intent not to sell such property or services so advertised."

126.     Defendants intentionally concealed facts and falsely advertised that

Defendants' wine products are "safe" in Florida and throughout the United States.

127.     As fully alleged above, by intentionally and knowingly concealing material

facts, advertising, marketing, distributing and selling mislabeled wine products to Plaintiffs

and other members of the Class who purchased this product, Defendants engaged in, and

continues to engage in, false advertising in violation of Fla. Stat. § 817.44 (2014).

128.     Defendants' concealment of material facts, false marketing, advertising, packaging and labeling of Defendants' wine products were likely to deceive reasonable consumers.

129.     Plaintiffs and other members of the Class who purchased Defendants' wine products in Florida were deceived.

130.     Absent such injunctive relief, Defendants will continue to falsely and illegally advertise Defendants' wine products to the detriment of consumers in the state of Florida.

131.     As a direct and proximate cause of Defendants' violation of Fla. Stat. § 817.44, Plaintiffs and the members of the Class who purchased Defendants' wine products in Florida were injured when they paid good money for this illegal and worthless product.

132.     As a result of Defendants' unlawful and deceptive business practices, Plaintiffs and the members of the Class who purchased Defendants' wine in Florida, pursuant to Fla. Stat. § 817.44, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiffs and the members of the Class who purchased Defendants' wine in Florida any money paid for Defendants' wine.

133.     Plaintiffs and the members of the Class are also entitled to attorneys' fees.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY: MERCHANTABILITY;
USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES
AND UNIFORM COMMERICAL CODE §2-314**

134.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

135. The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

136. Florida has codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2014).

137. Defendants' products are "goods" as defined in the various states' commercial codes governing the implied warranty of merchantability, including Florida.

138. As designers, manufacturers, licensors, producers, marketers, and sellers of their products, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability, including Florida.

139. By placing their products in the stream of commerce, Defendants impliedly warranted that the products are reasonably safe and that all claims on their packaging were true.

140. As merchants of their products, Defendants knew that purchasers relied upon them to design, manufacture, license and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendants and upon said implied warranties in purchasing and consuming Defendants' products.

141. Plaintiffs and the Class members purchased the Defendants' products for their intended purpose.

142. Defendants' products' defects were not open or obvious to consumers, including Plaintiffs and the Class, who could not have known about the true nature and contents of the Defendants' products.

143.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased Defendant's products. The terms of that contract included implied promises and affirmations of fact made by Defendant on the Defendant's products' packaging and through its marketing campaign, as described above. The Defendant's products' packaging and advertising constitute implied warranties, became parts of the basis of the bargain, and are parts of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendant on the other.

144.     At all times, and as detailed above, Defendant impliedly warranted that its products were safe, effective and fit for use by consumers, including Plaintiffs and the Class, for their intended use, that they were of merchantable quality, and that they did not produce dangerous side effects.

145.     At the time of making these and other warranties with respect to the safety, efficacy, testing and characteristics of Defendant's products, Defendant knew or should have known that it had breached the terms of the contract, including the implied warranties with Plaintiffs and the Class.

146.     Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendants, and upon said implied warranties, when purchasing Defendant's products.

147.     Due to Defendants' wrongful conduct as alleged herein, Plaintiffs and the Class could not have known about the true arsenic content of the Defendants' wine products.

148.     As a direct and proximate result of Defendant's breach of implied warranties and breach of merchantability, Plaintiffs and Class members have sustained injuries by purchasing the Defendants' products, which were not as represented, thus entitling Plaintiffs to judgment

and equitable relief against Defendant, as well as restitution, including all monies paid for the

Defendants' products and disgorgement of profits from Defendant received from sales of the

products, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

149.    All conditions precedent to Defendant's liability under this contract, including

notice, has been performed by Plaintiffs and the Class.

<div align="center">

**COUNT V**

**NEGLIGENCE**

</div>

150.    Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

151.    Defendants had a duty to represent their product accurately.  Defendants breached

that duty by negligently making misrepresentations of fact and omissions of material fact to

Plaintiffs and the other Class members about their wine products.

152.    Defendants failed to label or advertise their wine products in a lawful manner and

violated their duties owed to consumers by purposefully or negligently engaging in the deceptive

conduct described herein with the intent to deceive Plaintiffs, and consumers similarly situated.

153.    Plaintiffs and the other Class members, as a direct and proximate cause of

Defendants' breach of their duties, were damaged by receiving a worthless product, or at the

very least, a misbranded deceptively labeled product, by justifiably relying on Defendants'

material misrepresentation that their wine was safe for consumption or material omission about

the arsenic levels of their wine.

154.    Plaintiffs suffered an 'injury in fact' because Plaintiffs' money was taken by

Defendatns' as a result of Defendants' material omissions and false claims set forth herein.

155.    As described above, Defendants' actions violated a number of express statutory

provisions designed to protect Plaintiffs and the Class.

156.    Defendants' illegal actions constitute negligence *per se*.

157.    Moreover, the statutory food labeling and misbranding provisions violated by Defendants are strict liability provisions.

158.    By reason of the foregoing, Plaintiffs and the other Class members have suffered damages in an amount to be determined at trial.

## COUNT VI

### UNJUST ENRICHMENT

159.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

160.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing, and sales of Defendants' Defendants' wine, Defendants was unjustly enriched at the expense of Plaintiffs and the Class.

161.    Defendants sold Defendants' wine to Plaintiffs and the Class which was a product that was illegally sold, illegally misbranded, and had no economic value.

162.    It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits it received from Plaintiffs and the Class in light of the fact that the product was not what Defendants purported them to be.

163.    Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendants for the wine product at issue.

164.    As a direct and proximate result of Defendants' actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## COUNT VII

## VIOLATIONS OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (ALASKA STAT. § 45.50.471, *et seq*.)

165.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

166.     Alaska's Unfair Trade Practices And Consumer Protection Act ("AUTPCPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(8) advertising goods or services with intent not to sell them as advertised"; "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged"; and "(14) representing that an agreement confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law." ALASKA STAT. § 45.50.471.

167.     In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their wine products contained arsenic levels significantly higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful trade practices, including concealing, suppressing, and omitting material facts about its wine products.

168.     Defendants' misrepresentations and omissions described herein have the capacity or tendency to deceive. As a result of these unlawful trade practices, Plaintiffs and members of the Class have suffered ascertainable loss.

169.     Plaintiffs and the Class suffered ascertainable loss caused by the Defendants'
failure to disclose material information. Buyers such as Plaintiffs and members of the Class
would have acted differently knowing that the Defendants were selling wine products that
contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs
and members of the Class would have wanted to know, as would any reasonable person, that the
Defendants' wine products contained dangerous levels of arsenic and this information would
have changed their and any reasonable customer's decision to purchase the Defendants' wine
products.

170.     Plaintiffs are entitled to recover the greater of three times the actual damages or
$500, pursuant to ALASKA STAT. § 45.50.531(a). Attorneys' fees may also be awarded to the
prevailing party pursuant to ALASKA STAT. § 45.50.531(g).

## COUNT VIII

## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
(ARIZ. REV. STAT. § 44-1521, *et seq.*)

171.     Plaintiffs re-allege and incorporate by reference the allegations contained in
paragraphs 1 through 93 above as if fully set forth herein.

172.     Plaintiffs, members of the Class and Defendant are each "persons" as defined by
ARIZ. REV. STAT. § 44-1521(6). The wine products sold to Plaintiffs and the Class are
"merchandise" as defined by ARIZ. REV. STAT. § 44-1521(5).

173.     The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by
any person of any deception, deceptive act or practice, fraud, false pretense, false promise,
misrepresentation, or concealment, suppression or omission of any material fact with intent that
others rely upon such concealment, suppression or omission, in connection with the sale or
advertisement of any merchandise whether or not any person has in fact been misled, deceived or

damaged thereby." ARIZ. REV. STAT. § 44-1522(A).

174.    In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their wine products contained arsenic levels significantly higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful trade practices, including concealing, suppressing, and omitting material facts about its wine products.  By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Arizona Consumer Fraud Act, ARIZ. REV. STAT. § 44-1522(A). The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

175.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water.  Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

176.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arizona Consumer Fraud Act.

177.    Plaintiffs also seek court costs and attorneys' fees as a result of Defendants'

violation of the Arizona Consumer Fraud Act as provided in ARIZ. REV. STAT. § 12-341.01.

## COUNT IX

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### (ARK. CODE ANN. § 4-88-101 *et seq*.)

178.    Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

179.    Plaintiffs, members of the Class and Defendant are each "persons" as defined by

ARK. CODE ANN. § 4-88-102(5). The wine products the Defendants sold to Plaintiffs and

the Class are "Goods" as defined by ARK. CODE ANN. § 4-88-102(4).

180.    The Arkansas Deceptive Trade Practices Act proscribes "[d]eceptive and

unconscionable trade practices," and "[t]he act, use or employment by any person of any

deception, fraud or false pretense" or the "concealment, suppression or omission of any material

fact with intent that others rely upon the concealment, suppression or omission" when done "in

connection with the sale or advertisement of any goods …." ARK. CODE ANN. §§ 4-88-107,

108.

181.    In the course of the Defendants' business, each Defendant willfully failed to

disclose and actively concealed that their wine products contained arsenic levels significantly

higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful

trade practices, including concealing, suppressing, and omitting material facts about its wine

products.  By concealing and omitting material information from Plaintiffs and the Class and

by making affirmative misrepresentations as described above, the Defendants engaged in

deceptive business practices prohibited by the Arkansas Deceptive Trade Practices Act, ARK.

CODE ANN. § 4-88-101, *et seq*. The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the

Class did in fact rely upon those material omissions and misstatements.

182.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water.  Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

183.    Plaintiffs and the Class sustained actual damages or injury as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the Arkansas Deceptive Trade Practices Act.

184.    Plaintiffs also seek court costs and attorneys' fees as a result of the Defendants' violation of the Arkansas Deceptive Trade Practices Act as provided in ARK. CODE ANN. § 4-88-113(f).

## COUNT X

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS.&PROF. CODE § 17200, et seq.)

185.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

186.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair

competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL BUS. & PROF. CODE § 17200.

187.    The Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by their conduct, statements, and omissions described above.

188.    The acts engaged in by the Defendants are fraudulent and show a pattern of untruthful statements, false representations, concealment, intent to mislead, and a conspiracy to defraud that were all part of a scheme to mislead.

189.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. The Defendants' violations of the UCL caused injuries to Plaintiffs and Class members.

190.    The injuries suffered by Plaintiffs and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiffs and Class members should have or could have reasonably avoided.

191.    The Defendants' representations and acts as set out above induced Plaintiffs and others similarly situated to purchase the wine products. Plaintiffs reserve the right to identify additional violations by the Defendants as may be established through discovery.

192.    As a direct and legal result of its unlawful, unfair, and fraudulent conduct described above, the Defendants have been unjustly enriched. Specifically, the Defendants have been unjustly enriched by the receipt of large sums of ill-gotten gains from the deceptive and excessive monthly charges they have levied on customers.

193.    Pursuant to California Business and Professions Code section 17203, Plaintiffs seek an order of this Court:

        a. Compelling the Defendants to make restitution to the general public for all funds unlawfully, unfairly, or fraudulently obtained by the Defendants as a result of their

violations of California Business and Professions Code section 17200 et seq.; and

   b. Declaring that the Defendants have violated the provisions of California

Business & Professions Code section 17200, and California Business and Professions Code

section 17500, and any other statutory violations.

  194. In prosecuting this action for the enforcement of important rights affecting the

public interest, Plaintiffs seek to recover attorney fees under (i) section 1021.5 of the Code of

Civil Procedure and/or (ii) the "common fund" doctrine available to a prevailing plaintiff who

wins restitutionary relief for the general public.

<div align="center">

**COUNT XI**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE §§ 17500, et seq.)**

</div>

  195. Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

  196. California Bus. & Prof. Code § 17500 states: ""It is unlawful for any …

corporation … with intent directly or indirectly to dispose of real or personal property … to

induce the public to enter into any obligation relating thereto, to make or disseminate or cause to

be made or disseminated … from this state before the public in any state, in any newspaper or

other publication, or any advertising device, … or in any other manner or means whatever,

including over the Internet, any statement … which is untrue or misleading, and which is known,

or which by the exercise of reasonable care should be known, to be untrue or misleading."

  197. The Defendants caused to be made or disseminated through California and the

United States, through advertising, marketing and other publications, statements that were untrue

or misleading, and which were known, or which by the exercise of reasonable care should have

been known to the Defendants, to be untrue and misleading to Plaintiffs and the other Class

<div align="center">47</div>

members.

198.    The Defendants have violated § 17500 because its misrepresentations and omissions regarding the arsenic contents of the wine products described herein were material and likely to deceive a reasonable consumer.

199.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of the Defendants unfair, unlawful, and/or deceptive practices. In choosing to purchase Defendants' wine products, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of the Defendants with respect to the arsenic content of the wine products. Had Plaintiffs and the other Class members known the true facts, they would not have purchased the wine products from the Defendants.  Accordingly, Plaintiffs and the other Class members overpaid and did not receive the benefit of their bargain.

200.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the course of the Defendants' business. The Defendants' wrongful conduct is part of a pattern or generalized course of conduct that was perpetuated and repeated, both in the State of California and nationwide.

## COUNT XII

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. § 6-1-101, et seq.)

201.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

202.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes making "false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions." COLO. REV. STAT. § 6-1-105(1)(b), (e). The CCPA further

prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods … with intent not to sell them as advertised," and failing "to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105(1)(l), (u).

203.    The Defendants are "persons" within the meaning of COLO. REV. STAT. § 6-1-102(6).

204.    In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their wine products contained arsenic levels significantly higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful trade practices, including concealing, suppressing, and omitting material facts about its wine products.  By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Colorado Consumer Protection Act. The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

205.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water.  Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the

Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

206.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

207.    The Defendants' conduct proximately caused injuries to Plaintiffs and the other Class members. The Defendants' material misstatements and omissions were intended to, and had the capacity to deceive consumers, to attract consumer's to the Defendants' wine products, and to induce a party to act or refrain from acting. Plaintiffs were induced to act or refrain from acting by the Defendants' false and misleading statements and omissions. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products with arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

208.    Plaintiffs and the Class members were injured as a result of the Defendants' conduct in that Plaintiffs and the Class overpaid for the wine products and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions.

## COUNT XIII

## VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (Conn. Gen. Stat. Ann. § 42-110A, et seq.)

209.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

210.    Plaintiffs and Defendant are "persons" as defined by CONN. GEN. STAT. ANN. § 42-110a(3).

211.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. CONN. GEN. STAT. ANN. § 42-110b(a). The CUTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42-110g(a).

212.    In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their wine products contained arsenic levels significantly higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful trade practices, including concealing, suppressing, and omitting material facts about its wine products.  By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by by the CUTPA. The Defendants' material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

213.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs. Plaintiffs and the Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. Buyers

such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

214.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the CUTPA.

215.    Plaintiffs also seek court costs and attorneys' fees as a result of the Defendants' violation of the CUTPA as provided in CONN. GEN. STAT. ANN. § 42-110g(d). A copy of this Complaint is being mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with CONN. GEN. STAT. ANN. § 42-110g(c).

<div align="center">

**COUNT XIV**

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT**
**(6 DEL. CODE § 2513, et seq.)**

</div>

216.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

217.    The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

218.    The Defendants are persons within the meaning of 6 DEL. CODE § 2511(7).

219.    In the course of the Defendants' business, each Defendant willfully failed to disclose and actively concealed that their wine products contained arsenic levels significantly higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful trade practices, including concealing, suppressing, and omitting material facts about its wine products.  By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the Delaware Consumer Fraud Act.

220.    The Defendants material omissions and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

221.    The Defendants actions as set forth above occurred in the conduct of trade or commerce.

222.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

223.    Plaintiffs are entitled to recover damages, as well as costs and reasonable attorney fees as provided by the Delaware Consumer Fraud Act.

## COUNT XV

## VIOLATIONS OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 DEL. CODE § 2532, et seq.)

224.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

225.    Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes: "(9) Advertis[ing] goods or services with intent not to sell them as advertised"; "(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions," or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

226.    The Defendants are persons within the meaning of 6 DEL. CODE § 2531(5).

227.    The Defendants willfully failed to disclose and actively concealed material facts regarding the arsenic contents of their wine products. Accordingly, the Defendants engaged in deceptive trade practices, by omitting material facts in describing their wine products making false and misleading statements of fact regarding the contents of their wine products, and otherwise engaging in conduct which created a likelihood of confusion or misunderstanding.

228.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

229.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

230.    Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 DEL. CODE § 2533(c).

## COUNT XVI

## VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
### (IDAHO CIV. CODE § 480, et seq.)

231.     Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

232.     Defendants and Plaintiffs are "persons" under IDAHO CIVIL CODE § 48-602(1).

233.     Defendants engaged in unfair methods and practices in the conduct of its trade or

commerce in violation of the Idaho Consumer Protection Act ("ICPA"), IDAHO CIV. CODE §

48-603, including "(9) Advertising goods or services with intent not to sell them as advertised,"

"(11) Making false or misleading statements of fact concerning the reasons for, existence of, or

amounts of price reductions," "(17) Engaging in any act or practice which is otherwise

misleading, false, or deceptive to the consumer," or "Engaging in any unconscionable method,

act or practice in the conduct of trade or commerce."

234.     As set forth herein, the Defendants engaged in unfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade

or commerce in violation of the ICPA. The Defendants willfully failed to disclose and actively

concealed material facts regarding the arsenic contents of the wine products they sold.

Accordingly, the Defendants engaged in deceptive trade practices and otherwise engaged in

conduct which created a likelihood of confusion or misunderstanding.

235.     The Defendants' misleading, false, or deceptive acts or practices were likely to

and did in fact deceive reasonable consumers, including Plaintiffs. Buyers such as Plaintiffs and

members of the Class would have acted differently knowing that the Defendants were selling

wine products that contained arsenic levels significantly higher than EPA standards for drinking

water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable

person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

236.    As a result of its violations of the ICPA detailed above, the Defendants caused actual damage and ascertainable loss to Plaintiffs.

237.    The Defendants' deliberate, widespread and systematic fraud was so egregious and carried out with such willful and conscious disregard of the rights of their customers that their sales conduct would outrage or offend the public conscience, and is therefore an unconscionable method, act or practice under the ICPA as provided in IDAHO CIVIL CODE § 48-603C.

238.    Plaintiffs seek punitive damages against the Defendants because their violations were repeated and flagrant, conducted over the course of many years, with knowledge of the illegality of the conduct, and therefore warrants the imposition of punitive damages under IDAHO CIVIL CODE § 48-608(1).

239.    Plaintiffs further seek an order enjoining the Defendants' unfair or deceptive acts or practices, punitive damages, costs of Court, attorney's fees under IDAHO CIVIL CODE § 48-608, and any other just and proper relief available under the ICPA.

### COUNT XVII

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1, et seq.,
AND ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS § 510/2**

240.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

241.    The Defendants engaged in an unfair or deceptive act or practice by selling

wine products that failed to contain the ingredients they were represented to contain. The Defendants knew this practice was illegal, but nevertheless continued to sell the Herbal Supplements to the Plaintiffs and members of the Class.

242.    The Defendants further engaged in unfair or deceptive acts or practices by knowingly or willfully concealing, suppressing or omitting material facts from Plaintiffs and members of the Class and by making affirmative misrepresentations in order to induce Plaintiffs and members of the Class to purchase the wine products. The Defendants' material misstatements and omissions were likely to and did in fact deceive reasonable customers, including Plaintiffs, about the arsenic content of the wine products sold by the Defendants.

243.    The Defendants' practice offended public policy, was immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

244.    Plaintiffs and the Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

245.    The Defendants intended that Plaintiffs and members of the Class would rely on their misrepresentations as well as the material facts that they concealed, suppressed and omitted, as described above. Among other things, the Defendants intended that Plaintiffs and members of

the Class rely upon their representations and omissions that their wine products contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class relied upon Defendants' fraudulent and misleading statements, concealments, suppressions, and omissions, and as a result paid higher fees than they would have absent the Defendants' wrongful conduct.

246.    The Defendants' conduct is a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2. As a violation of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, the Defendants' conduct is a violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

247.    The Defendants' unfair or deceptive act or practice occurred in the course of conduct involving trade or commerce, and was directed to the market in general. The complained-of conduct in this case implicates consumer protection concerns.

248.    The Defendants' unfair or deceptive acts or practices proximately caused injury and ascertainable loss to Plaintiffs and members of the Class.

249.    Plaintiffs and the Class are entitled to actual damages, punitive damages, and reasonable attorneys' fees and costs, as well as any other relief the Court deems proper.

**COUNT XVIII**

**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
FOR CONSUMER FRAUDS ACT
(IOWA CODE §§ 714H.1, ET SEQ.)**

250.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

251.    Defendant is a "person" under Iowa Code § 714H.2(7).

252.    Plaintiffs are "consumers," as defined by Iowa Code § 714H.2(3), who purchased

wine products from the Defendants.

253.    Defendants participated in unfair or deceptive acts or practices that violated

Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), Iowa Code § 714H.1, et

seq., as described herein. Defendants are directly liable for these violations of law.

254.    In the course of the Defendants' business, each Defendant willfully failed to

disclose and actively concealed that their wine products contained arsenic levels significantly

higher than EPA standards for drinking water.  Accordingly, the Defendants engaged in unlawful

trade practices, including concealing, suppressing, and omitting material facts about its wine

products.  By concealing and omitting material information from Plaintiffs and the Class and

by making affirmative misrepresentations as described above, the Defendants engaged in

deceptive business practices prohibited by the Iowa CFA.  The Defendants' material omissions

and misrepresentations were made with the intent that Plaintiffs and the Class would rely upon

them, and Plaintiffs and the Class did in fact rely upon those material omissions and

misstatements.

255.    As alleged above, Defendants made numerous material omissions about the

Arsenic contents of their wine products.  Each of these omissions contributed to the deceptive

context of Defendant's unlawful advertising and representations as a whole.

256.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiffs, about the arsenic contents of their wine

products.   Buyers such as Plaintiffs and members of the Class

would have acted differently knowing that the Defendants were selling wine products that

contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs

and members of the Class would have wanted to know, as would any reasonable person, that the

Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

257.    As a result of their violations of the Iowa CFA detailed above, the Defendants caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.

258.    Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa Code. Because Defendants' conduct was committed willfully, Plaintiffs seek treble damages as provided in Iowa Code § 714H.5(4).

259.    Plaintiffs also seek court costs and attorneys' fees as a result of Defendants' violation of Chapter 714H as provided in Iowa Code § 714H.5(2).

## COUNT XIX

### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT (MASS. GEN. LAWS CH. 93A, et seq.)

260.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

261.    Plaintiffs intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS CH. 93A, § 2(1). Plaintiffs will make a demand in satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## COUNT XX

## VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
### (MINN. STAT. § 325F.68-70)

262.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

263.    Plaintiffs, members of the Class and the Defendants are each "persons" as defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), MINN. STAT. § 325F.68(2). The wine products sold by Defendants to Plaintiffs and the Class are "Merchandise" as defined by MINN. STAT. § 325F.68(2).

264.    The MPCFA makes unlawful, "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). The MPCFA further provides that "any person injured by a violation of [the MPCFA] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." MINN. STAT. § 8.31(3a).

265.    The Defendants willfully failed to disclose and actively concealed material facts regarding the arsenic contents of their wine products. Accordingly, the Defendants engaged in unlawful trade practices, including omitting the arsenic contents of their wine products, with the intent to sell them without disclosing the arsenic levels contained therein.   By concealing and omitting material information from Plaintiffs and the Class and by making affirmative misrepresentations as described above, the Defendants engaged in deceptive business practices prohibited by the MPCFA. The Defendants' material omissions and misrepresentations

were made with the intent that Plaintiffs and the Class would rely upon them, and Plaintiffs and the Class did in fact rely upon those material omissions and misstatements.

266.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

267.     Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the MPCFA.

## COUNT XXI

### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (M.S. § 407.20 ET SEQ.)

268.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

269.    The Defendants, by the actions complained of herein have violated the Missouri Merchandising Practices Act, § 407.020 R.S. Mo. et seq ("Missouri CPA") entitling Plaintiffs and the members of the Class to damages and relief under the Missouri CPA. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

270.    The Defendants used deception, false pretense, misrepresentation, and omitted key facts to entice their wine product customers to purchase their wines.

271.    The Defendants' conduct as set forth herein occurred in the course of trade or commerce as defined by the Missouri CPA.

272.     The Defendants' conduct as set forth herein affects the public interest because it was part of a generalized course of conduct affecting numerous customers throughout the country.

273.     Plaintiffs and members of the Class inherently relied on the representations and omissions the Defendants made regarding the arsenic contents of their wine products.

274.     The Defendants' conduct as set forth herein proximately caused injury in fact to the business or property of Plaintiffs and Class members.

275.     The Defendants are liable to Plaintiffs and the Class members for damages in an amount to be determined at trial, including attorneys' fees, costs and statutory damages, and should be enjoined from continuing to engage in these unlawful, deceptive, unreasonable and unlawful practices as alleged herein.

## COUNT XXII

### VIOLATIONS OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. § 87-301, et seq.)

276.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

277.     The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

278.     "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

279.     The Defendants engaged in unfair methods and practices in the conduct of its trade or commerce in violation of the NCPA, under which a person commits a violation when it "(9) Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person," "(11) Makes

false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," or "(15) Uses any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises."

280.    As set forth herein, the Defendants engaged in unlawful deceptive trade practices in the conduct of trade or commerce in violation of the NCPA. The Defendants willfully failed to disclose and actively concealed material facts regarding the arsenic contents of their wine products.

281.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce.

282.    The Defendants' actions impact the public interest because Plaintiffs were deceived, misled, and injured in exactly the same way as thousands of other of the Defendants' wine product customers, and because the cost of wine products and the arsenic contents in such wine products, impacts the cost of healthcare, and the public interest in maintaining affordable access to health services. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Defendants' business.

283.    Plaintiffs and the Class were injured in their business or property as a result of Defendants' conduct.

284.    The Defendants' conduct proximately caused the injuries to Plaintiffs and the Class, who are entitled to recover actual damages, as well as enhanced damages pursuant to § 59-1609.

## COUNT XXIII

## VIOLATIONS OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (N.H. REV. STAT. § 358-A:1, et seq.)

285.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

286.    The New Hampshire Consumer Protection Act ("NHCPA") prohibits "any unfair or deceptive act or practice in the conduct of any trade or commerce."

287.    "Trade or commerce" includes "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state."

288.    The Defendants engaged in unfair methods and practices in the conduct of its trade or commerce in violation of the NHCPA, including the following prohibited conduct: "(IX) Advertising goods or services with intent not to sell them as advertised," and "(XI) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."

289.    As set forth herein, the Defendants willfully failed to disclose and actively concealed material facts regarding the arsenic contents of their wine products. Accordingly, the Defendants engaged in unlawful trade practices, including omitting the arsenic contents of their wine products, with the intent to sell them without disclosing the arsenic levels in the wine products.

290.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and were committed willfully or knowingly.

291.    The Defendants' conduct proximately caused damage to Plaintiffs and the Class.

Plaintiffs and the Class seek the recovery of actual damages, costs and attorney's fees pursuant to N.H. REV. STAT. § 358-A:10-a.

## COUNT XXIV

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56-8-19, et seq.)**

292.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

293.    The New Jersey Consumer Fraud Act ("NJCFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2.

294.    The Defendants are persons within the meaning of the NJCFA. N.J. STAT. ANN. § 56:8-1(d).

295.    In the course of the Defendants' business, they willfully failed to disclose and actively concealed material facts regarding the arsenic contents of their wine products. Accordingly, the Defendants engaged in unlawful trade practices, including omitting the arsenic contents in their wine products, with the intent to sell them.  The Defendants knew or should have known that their conduct violated the NJCFA.

296.    The Defendants engaged in an unlawful practice under the NJCFA when they failed to disclose material information concerning the arsenic content of their wine products.

Defendants deliberately withheld the information regarding the arsenic content of their wine products to induce customers to purchase their wine products. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

297.    The Defendants' unlawful practices caused substantial injury to consumers.

298.    Plaintiffs and the Class suffered ascertainable loss of money or property caused by the Defendants' unlawful practices. Plaintiffs and the Class overpaid for the wine products they purchased and did not receive the benefit of their bargain.

299.    Plaintiffs are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19.

300.    Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiffs will mail a copy of this First Amended Consolidated Complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

## COUNT XXV

## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1, et seq.)

301.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

302.    The New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. §§ 57-12-1, et seq. ("New Mexico UTPA") makes unlawful any "[u]nfair or deceptive trade practices and

unconscionable trade practices in the conduct of any trade or commerce." N.M. STAT. ANN.

§ 57:12-3. Trade or commerce includes the "sale or distribution of any services." N.M. STAT.

ANN. § 57-12-2(C).

303. The Defendants engaged in unfair methods and practices in the conduct of its

trade or commerce in violation of the New Mexico UTPA, including the following prohibited

conduct: "(11) making false or misleading statements of fact concerning the price of goods or

services … or one's own price at a past or future time or the reasons for, existence of or amounts

of price reduction" and "(14) using exaggeration, innuendo or ambiguity as to a material fact or

failing to state a material fact if doing so deceives or tends to deceive," and "(15) stating that a

transaction involves rights, remedies or obligations that it does not involve."

304. The Defendants are persons within the meaning of the New Mexico UTPA. N.M.

STAT. ANN. § 57:12-2(A).

305. In the course of the Defendants' business, they knowingly failed to disclose and

actively concealed material facts and made false and misleading statements regarding the

arsenic contents of their wine products.

306. The Defendants took advantage of the lack of knowledge, ability, experience, and

capacity of Plaintiffs and the Class to a grossly unfair degree. The Defendants' actions resulted

in a gross disparity between the value received and the price paid by Plaintiffs and the Class.

The Defendants' actions constitute unconscionable actions under § 57-12-2(E) of the New

Mexico UTPA.

307. Plaintiffs and the Class lost money and sustained damages as a result of the

Defendants' unlawful acts and are, therefore, entitled to damages and other relief provided for

under § 57-12-10 of the New Mexico UTPA. Because the Defendants' conduct was committed

willfully, Plaintiffs and the Class seek treble damages, along with court costs and attorneys' fees.

## COUNT XXVI

## VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. GEN. BUS. LAW § 349)

308.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

309.    The Defendants' business acts and practices alleged herein constitute deceptive acts or practices under the New York General Business Law, Deceptive Acts and Practices, N.Y. GEN. BUS. LAW § 349 ("NYGBL").

310.    At all relevant times, Plaintiffs and Class members were consumers of the Defendants' wine products. The challenged behavior of the Defendants' was consumer oriented within the meaning of the NYGBL.

311. The practices of the Defendants, as alleged herein, violated the NYGBL for, inter alia, one or more of the following reasons:

a.  The Defendants engaged in deceptive, unfair and unconscionable commercial practices which did, or tended to, mislead Plaintiffs about facts that could not reasonably be known by them;

b.  The Defendants caused Plaintiffs to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

c.  The Defendants failed to reveal material facts to Plaintiffs and the Class members;

d. The Defendants made material representations and statements of fact to Plaintiffs and the Cass members; and

e. Under all of the circumstances, the Defendants conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

312.     The Defendants' violations of the NYGBL caused injuries to Plaintiffs and Class members.

### COUNT XXVII

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. GEN. STAT. § 75-1.1, et seq.)

313.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

314.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, et seq. ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. GEN. STAT. § 75-16.

315.     The Defendants' acts and practices complained of herein were performed in the course of its trade or business and thus occurred in or affected "commerce," which includes the Defendants' wine products as defined in N.C. GEN. STAT. § 75-1.1(b).

316.     In the course of the Defendants' business, it knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic contents of its wine products.

317.     Plaintiffs and members of the Class relied upon the Defendants' false and

misleading representations and omissions in deciding whether to purchase the Defendants'

wine products. Buyers such as Plaintiffs and members of the Class would have acted differently

knowing that the Defendants were selling wine products that contained arsenic levels

significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class

would have wanted to know, as would any reasonable person, that the Defendants' wine products

contained dangerous levels of arsenic and this information would have changed their and any

reasonable customer's decision to purchase the Defendants' wine products.

318.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

319.    Plaintiffs and the other Class members were injured as a result of the Defendants'

conduct in that Plaintiffs and the other Class members overpaid for the wine products they

purchased and did not receive the benefit of their bargain. These injuries are the direct and

natural consequence of the Defendants' misrepresentations and omissions.

320.    Plaintiffs, individually and on behalf of the other Class members, seek treble

damages pursuant to N.C. GEN. STAT. § 75-16, and an award of attorneys' fees pursuant to

N.C. GEN. STAT. § 75-16.1.

## COUNT XXVIII

### VIOLATIONS OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-01, et seq.)

321.    Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

322.    North Dakota's Consumer Fraud Act, N.D. CENT. CODE §§ 51-15-01, et seq.

("NDCFA"), prohibits a person from engaging in "any deceptive act or practice, fraud, false

pretense, false promise, or misrepresentation, with the intent that others rely thereon in

connection with the sale or advertisement of any merchandise, whether or not any person has in

fact been misled, deceived, or damaged thereby." N.D. CENT. CODE § 51-15-02. The

Defendants' wine products constitute "merchandise" as defined by the NDCFA. N.D. CENT.

CODE § 51-15-02(3).

323.     The NDCFA provides a private right of action against any person who has

acquired money or property "by means of any practice declared to be unlawful" by the NDCFA.

N.D. CENT. CODE § 51-15-09.

324.     In the course of the Defendants' business, they knowingly failed to disclose and

actively concealed material facts and made false and misleading statements regarding the

arsenic contents of their wine products.

325.     Plaintiffs and members of the Class relied upon the Defendants' false and

misleading representations and omissions in deciding whether to purchase the Defendants'

Herbal Supplements. Buyers such as Plaintiffs and members of the Class would have acted

differently knowing that the Defendants were selling wine products that contained arsenic levels

significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class

would have wanted to know, as would any reasonable person, that the Defendants' wine products

contained dangerous levels of arsenic and this information would have changed their and any

reasonable customer's decision to purchase the Defendants' wine products.

326.     The Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

327.      Plaintiffs and the other Class members suffered a loss of money or property and

were injured as a result of the Defendants' conduct in that Plaintiffs and the other Class members

overpaid for the wine products they purchased and did not receive the benefit of their bargain.

These injuries are the direct and natural consequence of the Defendants' misrepresentations and

omissions.

328.   The Defendants knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, are liable to Plaintiffs and the Class for treble damages, as well as attorneys' fees, costs, and disbursements.

## COUNT XXIX

## VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15 § 751, et seq.)

329.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

330.   Oklahoma's Consumer Protection Act, OKLA. STAT. TIT. 15 § 751, et seq. ("Oklahoma CPA"), makes it unlawful to commit unfair or deceptive trade practices. A deceptive trade practice "means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." OKLA. STAT. TIT. 15 § 752(13). An unfair trade practice "means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. TIT. 15 § 752(14).

331.   In the course of the Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic content of their wine products.

332.   The Defendants' misrepresentations could reasonably be expected to deceive or mislead a person to their detriment, and actually did deceive Plaintiffs and members of the Class. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than

EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

333.    The Defendants' conduct described above offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers and affect the public interest because Plaintiffs and members of the Class were injured in the same way as thousands of others through the Defendants' generalized course of deception.

334.    The Defendants' conduct proximately caused injuries to Plaintiffs and the Class. Plaintiffs and the other Class members suffered a loss of money or property and were injured as a result of the Defendants' conduct in that Plaintiffs and the other Class members overpaid for the wine products they purchased from Defendants and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of the Defendants misrepresentations and omissions.

335.    The Defendants are liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT XXX

### VIOLATIONS OF THE OKLAHOMA CONSUMER
### DECEPTIVE TRADE PRACTICES ACT
### (OKLA. STAT. TIT. 78 § 51-55, et seq.)

336.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

337.    Oklahoma's Deceptive Trade Practices Act, OKLA. STAT. TIT. 78 § 51-55, et seq. ("Oklahoma DTPA"), makes it unlawful to engage deceptive trade practices in the course of

a business, vocation or occupation. A person commits a deceptive trade practice when, he "11. Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." OKLA. STAT. TIT. 78 § 53.

338.    In the course of the Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic contents of their wine products.

339.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the Oklahoma DTPA.

340.    The Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing the Defendants' wine products as a result of the Defendants' generalized course of deception.

341.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered actual monetary loss. Plaintiffs overpaid for the wine products they purchased from Defendants and did not receive the benefit of their bargain.

342.    Plaintiffs seek an award of actual damages, attorney's fees and costs and permitted by the Oklahoma DTPA.

## COUNT XXXI

### VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. § 39-5-10, et seq.)

343.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

344.    The South Carolina Unfair Trade Practices Act ("SCUTP") prohibits "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. CODE ANN. § 39-5-20(a). The Defendants are persons within the meaning of

S.C. CODE ANN. § 39-5-10(a). 241. Trade or commerce as defined by the SCUTP includes "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State." S.C. CODE ANN. § 39-5-10(b). The Defendants' wine products at issue in this case are an "article, commodity or thing of value" under the SCUTP and affect the people of South Carolina directly and indirectly.

345.    In the course of the Defendants' business, they knowingly and willfully failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic content of the wine products they sold.

346.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute deceptive trade practices under the SCUTP.

347.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

348.    Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs and permitted by the SCUTP. S.C. CODE ANN. § 39-5-140.

## COUNT XXXII

## VIOLATIONS OF THE SOUTH DAKOTA DECEPTIVE
## TRADE PRACTICES AND CONSUMER PROTECTION ACT
## (S.D. CODE ANN. § 39-5-10, et seq.

349.    Plaintiffs re-allege and incorporate by reference the allegations contained in

paragraphs 1 through 93 above as if fully set forth herein.

350.    The South Dakota Deceptive Trade Practices and Consumer Protection Act

("SDCPA") makes it an unlawful, deceptive act or practice to "[k]nowingly and intentionally act,

use, or employ any deceptive act or practice, fraud, false pretense, false promises, or

misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or

advertisement of any merchandise, regardless of whether any person has in fact been misled,

deceived, or damaged thereby." S.D. CODIFIED LAWS § 37-24-6.

351.    The Defendants' wine products at issue in this case are "merchandise" under

the SDCPA. S.D. CODIFIED LAWS § 37-24-1.

352.    In the course of the Defendants' business, they knowingly and intentionally failed

to disclose and actively concealed material facts and made false and misleading statements

regarding the arsenic contents of their wine products..

353.    The Defendants' actions as set forth above occurred in the conduct of trade or

commerce, and constitute deceptive trade practices under the SDCPA.

354.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and

suffered ascertainable monetary loss. Buyers such as Plaintiffs and members of the Class would

have acted differently knowing that the Defendants were selling wine products that contained

arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members

of the Class would have wanted to know, as would any reasonable person, that the Defendants'

wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

355.    The Plaintiffs seek an award of actual damages, attorney's fees and costs as permitted by the SDCPA. S.C. CODE ANN. § 39-5-140.

## COUNT XXXIII

### VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN. § 47-18-101, et seq.)

356.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

357.    The Tennessee Consumer Protection Act ("TCPA") makes unlawful to commit unfair or deceptive acts or practices "affecting the conduct of any trade or conduct. TENN. CODE. ANN. § 47-18-104(b). Unfair or deceptive practices under the TCPA include "(9) Advertising goods or services with intent not to sell them as advertised," and "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." TENN. CODE ANN. § 47-18-104(b).

358.    The Defendants' wine products at issue in this case constitute "goods" under the TCPA. TENN. CODE ANN. § 47-18-103(18).

359.    In the course of the Defendants' business, they knowingly, willfully and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic contents of their wine products.

360.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the TCPA.

361.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and

suffered ascertainable monetary loss. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

362.    Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs as permitted by the TCPA. TENN. CODE ANN. § 47-18-109.

## COUNT XXXIV

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (TEX. BUS. & COM. CODE § 17.41, et seq.)

363.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

364.    Plaintiffs intend to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." TEX. BUS. & COM. CODE § 17.46. Plaintiffs will make a demand in satisfaction of TEX. BUS. & COM. CODE § 17.45(2), and may amend this Complaint to assert claims under the TDTPA once the required 60 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA.

## COUNT XXXV

## VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT
## (VT. STAT. ANN. § 2451, et seq.)

365.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

366.    The Vermont Consumer Fraud Act ("VCPA") makes unlawful to commit "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. § 2453(a). The VCPA provides a private right of action for "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices … or who sustains damages or injury as a result of any false or fraudulent representations or practices" prohibited by the VCPA. VT. STAT. ANN. § 2461(b).

367.     Plaintiffs are each "consumers" as defined by VT. STAT. ANN. § 2451a(a). The Defendants' Nutritional Supplements are "goods" under VT. STAT. ANN. § 2451a(b).

368.    In the course of the Defendants' business, they knowingly and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic content of the wine products they sold.

369.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the VCPA.

370.    Plaintiffs and the Class relied upon and were deceived by the Defendants' unfair and deceptive misrepresentations of material fact in deciding whether to purchase the Defendants' Herbal Supplements. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants'

wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

371.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Plaintiffs overpaid for the wine products they purchased from Defendants and did not receive the benefit of their bargain.

372.    Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs as permitted by the VCPA. VT. STAT. ANN. § 2461(b).

## COUNT XXXVI

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
(REV. CODE WASH. ANN. § 19.86.010, et seq.)**

373.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 93 above as if fully set forth herein.

374.    The Washington Consumer Protection Act ("WCPA") makes unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." REV. CODE WASH. ANN. § 19.86.020. The WCPA provides a private right of action for "[a]ny person who is injured in his or her business or property" by violations of the Act. REV. CODE WASH. ANN. 19.86.090.

375.    In the course of the Defendants' business, they knowingly and intentionally failed to disclose and actively concealed material facts and made false and misleading statements regarding the arsenic contents of the wine products they sold to Plaintiffs and members of the Class.

376.    The Defendants' actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the WCPA. The Defendants' actions impact the public interest because Plaintiffs were injured in exactly the same way as

thousands of others purchasing the Defendants' wine products as a result of the Defendants' generalized course of deception. The Defendants' conduct has the capacity to, and has actually caused injury not only to Plaintiffs, but to thousands of other the Defendants' wine product customers in Washington and around the country.

377.    Plaintiffs and the Class relied upon and were deceived by the Defendants' unfair and deceptive misrepresentations of material fact in deciding to enter into contracts or continue doing business with the Defendants. Buyers such as Plaintiffs and members of the Class would have acted differently knowing that the Defendants were selling wine products that contained arsenic levels significantly higher than EPA standards for drinking water. Plaintiffs and members of the Class would have wanted to know, as would any reasonable person, that the Defendants' wine products contained dangerous levels of arsenic and this information would have changed their and any reasonable customer's decision to purchase the Defendants' wine products.

378.    Plaintiffs and the Class were injured as a result of the Defendants' conduct, and suffered ascertainable monetary loss. Plaintiffs overpaid for the wine products they purchased from Defendants and did not receive the benefit of their bargain.

379.    Plaintiffs seek an award of actual damages, treble damages, attorney's fees and costs as permitted by the WCPA. REV. CODE WASH. ANN. § 19.86.090.

380.    Pursuant to WASH. REV. CODE. ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated persons, pray for judgment against Defendants as follows:

A.    Declaring that this action may be maintained as a class action pursuant to Federal

Rules of Civil Procedure, Rule 23, and for an order certifying this case as a class action and appointing Plaintiffs as Class representatives;

B.      Declaring that the Defendants' practice of advertising and selling Herbal Supplements that fail to contain the ingredients advertised, was wrongful and unfair;

C.      Restitution of all purchases of Herbal Supplements by Plaintiffs and the Class, in an amount to be determined at trial;

D.      Disgorgement of the ill-gotten gains derived by the Defendants from their misconduct;

E.      Actual damages in an amount according to proof;

F.      Punitive damages;

G.      Compensatory damages caused by the Defendants' unfair or deceptive practices; along with exemplary damages to Plaintiffs and each Class member for each violation;

H.      A permanent injunction requiring the Defendants to cease selling Herbal Supplements that fail to contain the advertised ingredients;

I.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

J.      An order awarding Plaintiffs and the Class their attorney's fees and costs and expenses incurred in connection with this action; and

M.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues so triable.

Dated: March 20, 2015

<div style="margin-left: 50%;">

Respectfully submitted,


*/s/ Tim Howard*_____
Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

*Attorney for Plaintiffs*

</div>